UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BRET DUANE HANNAM,

Petitioner,

v.

CONNIE ROEHRICK, Warden,

Respondent.

Civil No. 00-2694 (JMR/SRN)

**REPORT AND RECOMMENDATION**

Thomas A. Volk, 1059 Stoughton Avenue, Chaska, MN 55318, for Petitioner.

Patrick A. Oman, County Attorney for Mower County, 201 1st Street NE, Austin, MN 55912, for Respondent.

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on the petition of Bret Duane Hannam, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed an Answer, (Docket No. 4), requesting that the petition be dismissed. The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court concludes that Petitioner's habeas corpus petition must be DISMISSED WITH PREJUDICE.

## I. BACKGROUND

On May 19, 1998, a criminal complaint was issued against Petitioner, charging him with (1) "assault in the second degree -- dangerous weapon," in violation of Minn.Stat. § 609.222, Subd. 1; (2) "burglary in the first degree," in violation of Minn.Stat. § 609.582, Subd. 1(a)(b)(c); (3) "domestic assault in the fifth degree," in violation of Minn.Stat. §

JUL 31 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

609.2242; (4) "violation of an order for protection," in violation of Minn.Stat. § 518B, Subd. 14; and (5) "criminal damage to property in the fourth degree," in violation of Minn.Stat. § 609...595, Subd. 3. (A copy of the criminal complaint is included in Respondent's Answer, [Docket No. 4], at Exhibit 1.)

All of the charges against Petitioner stemmed from an incident that occurred on the morning of May 15, 1998. According to the criminal complaint, Petitioner visited the home of a woman that he knew, who apparently was an ex-girlfriend. The woman was awakened when she heard Petitioner trying to break open her front door with a wood-splitting maul. By the time Petitioner had forced his way into the home, the woman was hiding in a closet. Petitioner was carrying a .357 magnum handgun. At one point, Petitioner left the house, and the woman was able to call 911. However, Petitioner returned to the house before the police arrived, and continued to search for the woman inside. When Petitioner later left the house for a second time, the woman was able to escape unharmed.[1]

---

[1] Neither party has offered an independent statement of the facts in this proceeding, so the Court has been forced to rely on the limited record supplied by Respondent to gain some understanding of the factual history of the case. A memorandum prepared by the state trial court judge, and a later opinion by the Minnesota Court of Appeals, suggest that the evidence adduced at trial was not wholly consistent with the factual allegations in the criminal complaint described in the text. The trial court's memorandum describes the trial evidence as follows:

> "Ms. Morse [the homeowner victim] and her companion John Wandro were in her bedroom when they were startled at approximately 8:00 a.m. by a loud crash coming from the front door of the house. The Morse house is equipped with a vestibule or entry hall which has doors leading outside and into the house. The crash occurred when [Petitioner] used the maul on the door inside of the vestibule. Mr. Wandro ran out of the bedroom to investigate, spied [Petitioner's] vehicle in the Morse driveway, and concluded that [Petitioner] was attempting to break down the inside door of the vestibule with a heavy object. Mr. Wandro immediately leaped through a window and ran down the road for help. Ms. Morse remained in the house, hiding in the

A jury found Petitioner guilty of first degree burglary involving an occupied dwelling, criminal damage to property, and violation of a protective order. He was acquitted on the other charges against him, including first degree burglary with a dangerous weapon[2] and second degree assault with a dangerous weapon.

After the verdict was returned, the prosecutor asked the trial court judge to impose

---

> closet of her children's bedroom. Through the closet door she observed [Petitioner] enter the room with a handgun and heard him call, 'I know you're in here. Come out' and 'I won't hurt you.' When [Petitioner] left the house temporarily, Ms. Morse phoned the police dispatcher. She hid again when [Petitioner] reentered the house, leaving the phone off its cradle. [Petitioner] then began speaking with the dispatcher through that phone. After a lengthy stand-off, he surrendered to authorities."

("Memorandum" filed October 23, 1998, Respondent's Answer, [Docket No. 4], Exhibit 2.)

The Minnesota Court of Appeals offered the following summary of the relevant facts:

> "At trial, the victim testified that [Petitioner] first brought a pistol into her house and then came into her house a second time with a rifle, which he left on the floor with some ammunition. A neighbor who arrived to help the victim testified that [Petitioner] came out of the house, took the pistol from his pocket, and surrendered it to the neighbor, who eventually gave it to the police. [Petitioner] disputes neither this testimony nor his admission to the police dispatcher that he had possessed a gun during the burglary but had given it to the neighbor."

State v. Hannam, 601 N.W.2d 454, 455 (Minn.App. 1999).

Although there appears to be some discrepancies between the various factual summaries included in the present record, the Court is satisfied that any such discrepancies are immaterial for present purposes; they have no bearing at all on the issues to be decided here, which are purely issues of law.

[2] Under Minn.Stat. § 609.582, a burglary becomes a first degree burglary if (a) the burglarized building is occupied at the time of the burglary, (b) the burglar possesses a dangerous weapon while committing the burglary, or (c) the burglar commits and assault while committing the burglary. Petitioner was accused of committing first degree burglary based on all three of the circumstances listed in § 609.582, but the jury found him guilty only on the charge of committing a burglary of a building that was occupied.

a "mandatory minimum" three-year sentence, pursuant to Minn.Stat. § 609.11, Subd. 5. That statute provides that a defendant convicted of a burglary

> "in which the defendant or an accomplice, at the time of the offense, had in possession or used, whether by brandishing, displaying, threatening with, or otherwise employing, a firearm, shall be committed to the commissioner of corrections for not less than three years, nor more than the maximum sentence provided by law."

The trial court judge agreed that Petitioner should be sentenced under § 609.11, Subd. 5, based on these findings of fact:

> "1. That [Petitioner], in conversation with a police dispatcher on the morning of May 15, 1998, acknowledged possessing a 'gun' while within the residence of Suzanne K. Morse.
>
> 2. That Suzanne Morse testified that she observed [Petitioner] brandishing/displaying a handgun while he was within her residence without her consent.
>
> 3. That disinterested third-party witness Patrick Arndorfer testified that he observed [Petitioner] carrying a handgun after he exited the residence of Ms. Morse, and that the said .357 Magnum Python pistol was introduced into evidence.
>
> 4. That no contradictory evidence was introduced."

("Findings of Fact" dated October 23, 1998, Respondent's Answer, [Docket No. 4], Exhibit 2.)

Petitioner ultimately was sentenced to 36 months in prison – the statutory minimum required by § 609.11, Subd. 5. He was serving his sentence at the Minnesota Correctional

Facility in Faribault, Minnesota, when he filed his current petition.[3]

Following his convictions and sentence, Petitioner took a direct appeal to the Minnesota Court of Appeals. There, he argued that the trial judge erred by imposing the three-year mandatory minimum sentence based on the judge's own factual determination, applying a "preponderance of the evidence" standard, that Petitioner had possessed a firearm while committing a burglary. The Court of Appeals rejected Petitioner's argument, concluding that

> "[t]he district court's use of the preponderance of the evidence standard, rather than the beyond a reasonable doubt standard, in determining that [Petitioner] possessed a firearm at the time he committed burglary was not error of law and did not violate due process."

State v. Hannam, 601 N.W.2d 454, 456 (Minn.App. 1999).

The Court of Appeals further concluded that the three-year mandatory minimum sentence for possession of a firearm during a burglary could properly be applied, even though Petitioner was acquitted on a separate criminal charge of first degree burglary based on possession of a dangerous weapon. Id.

After the Court of Appeals affirmed Petitioner's convictions and sentence, he sought further review in the Minnesota Supreme Court. His request for further review was denied on December 21, 1999. Id.

On April 27, 2000, Petitioner filed a motion in the trial court, seeking post-conviction relief pursuant to Minn.Stat. § 590.01 et seq. That motion was summarily denied on May

---

[3] It is not clear whether Petitioner is still incarcerated at this time; but even if he is not, his petition still must be addressed. See Carafas v. LaVallee, 391 U.S. 234, 238 (1968) (state habeas petition is still justiciable despite petitioner's post-filing release from custody).

5, 2000, because Petitioner had not alleged any facts in support of his motion. Petitioner then filed an "Amendment To Petition For Post-Conviction Relief," in which he attempted to cure the defect in his initial motion. In his amended post-conviction motion, Petitioner argued that

> (i) there was insufficient evidence that he possessed a firearm when he burglarized the victim's home;
>
> (ii) the trial court should not have instructed the jury that he could be found guilty of first degree burglary for causing criminal damage to property;
>
> (iii) he was subjected to double jeopardy, in violation of his federal constitutional rights, when he was sentenced under the mandatory minimum statute, because the jury had already acquitted him of first degree burglary based on possession of a dangerous weapon;
>
> (iv) his conviction was based on false testimony introduced at his trial;
>
> (v) his attorney failed to raise proper objections to the "pre sentence investigation;" and
>
> (vi) he received ineffective assistance of counsel, because his public defender failed to raise the foregoing issues in a proper and timely manner.

The trial court judge accepted Petitioner's amended post-conviction motion, but rejected all of Petitioner's post-conviction claims on the merits. (Copies of Petitioner's two post-conviction motions, and the orders denying those motions, are attached to Respondent's Answer, [Docket No. 4], as Exhibits 5, 6, 7 and 8.) Petitioner did not appeal the trial court's denial of his post-conviction motion.

On December 12, 2000, Petitioner filed his present application for federal habeas

corpus relief, which lists the following four claims:

(1) that he was denied due process, because the trial court judge imposed a three-year mandatory minimum sentence based on the judge's own finding that Petitioner possessed a firearm while committing a burglary;

(2) that the trial court judge "erroneously instructed the jury that they could use criminal damage to property as an element of first degree burglary;"

(3) that the trial court violated the constitutional prohibition against double jeopardy, by imposing the three-year mandatory minimum sentence based on possession of a firearm while committing a burglary, after the jury had acquitted him for committing a burglary while possessing a dangerous weapon; and

(4) that the trial court judge "erroneously instructed the jury that they could use violation of Order of Protection as an element of first degree burglary."

(Petition, [Docket No. 1], pp. (5)-(6), ¶ 12.)

For the reasons discussed below, the Court finds that the last three of Petitioner's four claims, (grounds two, three and four), cannot properly be entertained here, because they have been procedurally defaulted. The single claim that can be entertained, the due process claim listed at ground one, must be rejected on the merits.

## II. DISCUSSION

### A. Grounds Two, Three and Four Have Been Procedurally Defaulted

Three of Petitioner's current claims for relief -- grounds two, three and four -- have

not been fairly presented to the highest available state court. Because it is now too late to seek further state court review of those claims, they must be summarily denied on the grounds of procedural default.

**(i) Applicable Legal Principles**

A federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies for all of his claims. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982). This exhaustion of state remedies requirement is based on the principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal constitutional errors raised by state prisoners. O'Sullivan, 526 U.S. at 842; Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Rose v. Lundy, 455 U.S. at 518-19; Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).[4]

"Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts,... state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845 (emphasis added). In other words, a prisoner must fairly present all of his constitutional claims to the highest available state

[4] The exhaustion issue is properly before the Court, even though it was not directly raised in Respondent's answer, because Respondent has not expressly waived the exhaustion requirement. 28 U.S.C. § 2254(b)(3) ("[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement").

court before seeking relief in federal court. State prisoners who have the right to seek discretionary review in the state's supreme court must exercise that right, and seek such review, in order to satisfy the exhaustion of state remedies requirement. Id. at 847.

When a prisoner has not exhausted his state court remedies with respect to some particular claim, and state procedural rules preclude any further attempts to satisfy the exhaustion requirement as to that claim, then the claim has been procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 750 (1991); McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997). See also O'Sullivan, 526 U.S. at 848 (petitioner's failure to present his federal habeas claims to the state supreme court in a timely manner results in a procedural default of those claims). A claim that has been procedurally defaulted will not be entertained in a federal habeas corpus proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim. Coleman, 501 U.S. at 750.[5] The Supreme Court has summarized the rules governing

---

[5] The "fundamental miscarriage of justice" exception is available only upon a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995), cert. denied, 516 U.S. 1161 (1996) (emphasis added), quoting Schlup v. Delo, 513 U.S. 298, 327 (1995). In other words, the petitioner cannot simply point to errors that allegedly occurred during the course of his criminal prosecution; he must instead offer some new evidence which affirmatively demonstrates that he is, in fact, innocent of the crime for which he was convicted.

> "The actual innocence exception is concerned with claims of actual, not legal innocence. Anderson v. United States, 25 F.3d 704, 707 (8th Cir. 1994). It is evidence of factual innocence coupled with a constitutional violation which triggers the actual innocence exception. Indeed, a credible claim of actual innocence 'requires [a] petitioner to support his allegation of constitutional error with new reliable evidence....' [Schlup, 513 U.S. at 324.] Examples of evidence which may establish factual innocence include credible

procedural default as follows:

> "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violations of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice".

Id.

**(ii) Petitioner's Procedural Default**

In this case, Petitioner's two jury instruction claims, (grounds two and four), and his double jeopardy claim, (ground three), have been procedurally defaulted, because they have never been presented to Minnesota's highest state court, and it is now too late to do so. Petitioner raised those claims for the first (and only) time in his amended post-conviction motion. After those claims were denied by the trial court, he did not pursue them any further. Because Petitioner never sought any appellate review of his jury instruction claims and his double jeopardy claim, he has not satisfied the exhaustion requirement for those claims.

Moreover, it is now much too late for Petitioner to seek appellate review of the claims raised in his post-conviction motion. The deadline for filing an appeal expired 60 days after the trial court denied his motion. Minn.Stat. § 590.06. Because Petitioner did

---

> declarations of guilt by another, see Sawyer v. Whitley, 505 U.S. 333, 340... (1992), trustworthy eyewitness accounts, see Schlup, 513 U.S. [at 324]... and exculpatory scientific evidence."

Pitts v. Norris, 85 F.3d 348, 350-51 (8th Cir.), cert. denied, 519 U.S. 972 (1996). For purposes of showing actual innocence, "'evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" Johnson v. Norris, 170 F.3d 816, 817 (8th Cir. 1999), quoting Armine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997) (en banc), cert. denied, 523 U.S. 1123 (1998).

not present grounds two, three and four of his current petition to the Minnesota appellate courts, and it is now to late to do so, the Court concludes that those three claims have been procedurally defaulted.

**(iii) Cause and Prejudice/Actual Innocence**

The only remaining question with regard to grounds two, three and four is whether Petitioner has shown cause and prejudice, or actual innocence, to excuse his procedural default. Petitioner has not specifically attempted to satisfy either the cause and prejudice standard, or the actual innocence standard, and the Court's own independent review of the record has disclosed no proper basis to excuse his procedural default.

In order to satisfy the "cause" requirement, a prisoner must show that some external impediment prevented him from presenting his claims to the state's highest court in a procedurally proper manner. Coleman, 501 U.S. at 753 ("'cause' under the cause and prejudice test is something external to the petitioner, something that cannot fairly be attributed to him... [f]or example, 'a showing that the factual or legal basis for a claim was not reasonably available... or that some interference by officials made compliance impracticable'"), (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (emphasis in the original).

In this case, the Court finds no external cause for Petitioner's procedural default. Petitioner claims that he did not appeal from the denial of his post-conviction motion because he "was then unaware of procedures to appeal from denial." (Petition, p. (4), ¶ 11(d).) Needless to say, Petitioner's own personal unfamiliarity with state court appellate procedures cannot be viewed as an external impediment. Therefore, his alleged lack of awareness of the "procedures to appeal" does not constitute sufficient "cause" to overcome

his procedural default. Smittie, 843 F.2d at 298 (habeas petitioners cannot escape the exhaustion of state remedies requirement by alleging "procedural ignorance"); Stanley v. Lockhart, 941 F.2d 707, 710 (8th Cir. 1991) (petitioner's "pro se status and his limited educational background do not constitute sufficient cause to excuse his procedural default"). Because Petitioner has failed to satisfy the cause component of the cause and prejudice requirement, it is unnecessary to consider whether he could satisfy the prejudice component. Ashker v. Class, 152 F.3d 863, 871 (8th Cir. 1998) (when petitioner "has not shown adequate cause to overcome the procedural bar... we need not consider the issue of actual prejudice"); Sweet v. Delo, 125 F.3d 1144, 1151 (8th Cir. 1997), cert. denied, 523 U.S. 1010 (1998) (same).

Finally, Petitioner has offered no new evidence proving that he must, in fact, be innocent of the crimes for which he was convicted and sentenced. (See discussion at n. 5, supra.) Therefore, he cannot overcome his procedural default by way of the actual innocence exception. Because Petitioner's procedural default cannot be excused, his second, third, and fourth grounds for relief must be summarily denied.

B. Ground One -- The Due Process Claim -- Is Non-Meritorious

The one federal constitutional claim that Petitioner fairly presented to the Minnesota Supreme Court was ground one of his current petition; i.e., his denial of due process claim. That claim will be addressed on the merits here.

**(i) Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the standards that govern federal judicial review of habeas corpus petitions filed by state

prisoners. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Court pointed out that

> "a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a conclusion opposite to ours."

Id. at 1519 (emphasis added).

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

Id. at 1523.

The Court further explained that

> "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.... [¶] [A] federal habeas court may not issue the writ simply because that court concludes in its independent

> judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

Id. at 1521-22 (emphasis added).

When assessing whether a state court decision "was based on an unreasonable determination of the facts," a federal habeas court must "presume[ ] that the state court's factual determinations are correct" -- a presumption that "may be rebutted only by clear and convincing evidence." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000), citing 28 U.S.C. § 2254(e)(1).

In sum, a federal court is not free to conduct its own de novo review of a state prisoner's constitutional claims. Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d)(1) or (2), as those subsections of the statute have been interpreted by the Supreme Court in Williams.

**(ii) Petitioner's Due Process Claim**

In the present case, Petitioner has made no effort to satisfy any of the specific statutory preconditions for obtaining federal habeas relief, as listed in § 2254(d). He does not specifically suggest that any decision by the Minnesota state courts was "contrary to" any specific U.S. Supreme Court precedent; he does not suggest that any such decision constitutes an "unreasonable application" of any Supreme Court precedent; and he does not suggest that any state court decision "was based on an unreasonable determination of the facts." Thus, the Court is left to independently consider whether Petitioner meets any of the conditions that would warrant the issuance of a writ of habeas corpus.

Two possible arguments can be quickly eliminated. First, Petitioner cannot be granted relief under the "contrary to" clause of § 2254(d)(1), because he has not identified, (nor is the Court independently aware of), any U.S. Supreme Court decision that is directly opposite to the decision reached by the Minnesota appellate courts in Petitioner's case. Second, Petitioner cannot be granted relief under the "unreasonable determination of the facts" clause of § 2254(d)(2), because the state appellate courts were never asked to consider any factual issues.[6] It follows that Petitioner can be granted a writ of habeas corpus only under the third alternative listed in § 2254(d) -- i.e., if the state courts rendered a decision in his case that "involved an unreasonable application" of a Supreme Court precedent.

The only U.S. Supreme Court decision mentioned by the Minnesota Court of Appeals is McMillan v. Pennsylvania, 477 U.S. 79 (1986). In that case, the Court upheld the constitutionality of a state statute that provided mandatory minimum sentences for certain types of crimes, based on a judge's own determination, supported by a mere preponderance of the evidence, that the defendant had "visibly possessed a firearm" while committing his crime. The Supreme Court rejected the defendants' contention that the facts supporting a mandatory minimum sentence had to be determined by a jury, beyond

---

[6] The Minnesota Court of Appeals expressly noted that "there is no factual dispute here; the issues involve statutory construction." Hannam, 601 N.W.2d at 455. Petitioner cannot now argue here that the state courts made an erroneous determination on an issue of fact, because he procedurally defaulted any such argument by failing to present it to the state appellate courts.

a reasonable doubt.[7] Applying McMillan, the Minnesota Court of Appeals concluded in Petitioner's case that the federal Constitution permits a state court judge to impose a mandatory minimum sentence pursuant to Minn.Stat. § 609.11, subd. 5, if it reasonably appears to the judge, based on a preponderance of the evidence, that the defendant possessed a firearm when he committed his crime.[8]

---

[7] In the words of the Court:

> "Petitioners argue that under the Due Process Clause... if a State wants to punish visible possession of a firearm it must undertake the burden of proving that fact beyond a reasonable doubt. We disagree."

477 U.S. at 84.

On the right to a jury trial, the Court wrote:

> "[P]etitioners' final claim – that the [Pennsylvania mandatory minimum law] denies them their Sixth Amendment right to a trial by jury – merits little discussion. Petitioners again argue that the jury must determine all ultimate facts concerning the offense committed. Having concluded that Pennsylvania may properly treat visible possession as a sentencing consideration and not an element of any offense, we need only note that there is no Sixth Amendment right to jury sentencing even where the sentence turns on specific findings of fact."

Id. at 93.

[8] In McMillan, the Supreme Court emphasized that Pennsylvania's mandatory minimum statute did not increase the maximum sentence for any of the crimes to which the statute applied. 477 U.S. at 87-88 (noting that the Pennsylvania's statute "neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm"). See also, Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt") (emphasis added). The statute at issue here, (as in McMillan), establishes only a minimum sentence – three years for Petitioner's particular offense. The statutory maximum sentence for Petitioner's offense is twenty years. Minn.Stat. § 609.582, Subd. 1. Thus, the sentence imposed by the trial judge pursuant to

Petitioner has not identified anything "unreasonable" about the Minnesota Court of Appeals' application of McMillan to his case. To the contrary, the state appellate court's application of McMillan was eminently reasonable. In fact, it is hard to imagine how, in light of McMillan, Petitioner's appeal could have been decided any differently. Thus, the Court concludes that Petitioner is not eligible for habeas corpus relief under the "unreasonable application" standard set forth in § 2254(d)(1).

Finally, the Court has not overlooked the fact that the jury in Petitioner's case found him not guilty on a charge that he possessed a dangerous weapon while committing a burglary. See Minn.Stat. § 609.582, Subd. 1(b). Petitioner has not explained, however, how that acquittal alone could cause his mandatory minimum sentence to be at odds with any specific Supreme Court precedent, and thereby warrant habeas corpus relief.

As the trial court judge correctly observed, the jury's verdict does not conclusively demonstrate that Petitioner did not possess a firearm when he committed his crime. (See "Memorandum" dated October 23, 1998, at p. 3; Respondent's Answer, [Docket No. 4], Exhibit 2.) It is possible that Petitioner was acquitted because the jury found there was insufficient evidence to prove beyond a reasonable doubt that he possessed a firearm. That would not preclude the trial court judge from making a different finding at sentencing, using the lower preponderance of the evidence standard. As explained by the trial judge, "[l]ogically, the acquittal did not foreclose the possibility that [Petitioner's] possession and display of a handgun while inside the Morse dwelling could be proven by a lesser

---

the mandatory minimum statute was obviously "within the range already available" (under § 609.582, Subd. 1), even without the judge's determination that Petitioner had possessed a firearm.

evidentiary showing, e.g., by a preponderance of the evidence." (Id.)[9]

Pointing to the difference between the standard of proof for a conviction and the standard of proof for sentencing, the Eighth Circuit Court of Appeals has "consistently held that acquittal on a weapons charge does not preclude sentencing enhancement for the acquitted conduct." United States v. Roach, 28 F.3d 729, 736 (8th Cir. 1994), citing United States v. Meyers, 990 F.2d 1083, 1086 (8th Cir. 1993); United States v. England, 966 F.2d 403, 409-10 (8th Cir.), cert. denied, 506 U.S. 1025 (1992); United States v. Johnson, 962 F.2d 1308, 1313 (8th Cir.), cert. denied, 506 U.S. 928 (1992); United States v. Dawn, 897 F.2d 1444, 149-50 (8th Cir.), cert. denied, 498 U.S. 960 (1990). In other words, a defendant's sentence can properly be increased based on his possession of a weapon during his crime, even if he was acquitted of a related offense that includes possession of a weapon as an element. Petitioner has made no effort to distinguish Roach or any of its numerous precedents. Nor has he identified any U.S. Supreme Court decision, (or any other persuasive legal authority), that would compel the issuance of a writ of habeas corpus simply because he received a three-year minimum sentence under Minn.Stat. § 609.11, Subd. 5., after being acquitted on charges of violating Minn.Stat. § 609.582, Subd. 1(b).

## III. CONCLUSION

For the reasons discussed above, the Court concludes that Petitioner's habeas

---

[9] As the State Court of Appeals observed, it is also possible that "[i]n finding [Petitioner] not guilty of burglary-dangerous weapon but guilty of burglary-occupied dwelling, the jury may have been exercising its power of lenity." Hannam, 601 N.W.2d at 456, n. 2, citing State v. Perkins, 353 N.W.2d 557, 561 (Minn. 1984) for the proposition that "when the jury believes defendant guilty of two offenses, it may through the exercise of lenity convict him of only one."

corpus petition must be denied. He is not entitled to relief on his first claim, (the challenge to his three-year mandatory minimum sentence), because he has not shown that the state courts' resolution of that claim was "contrary to, or involved an unreasonable application of," any U.S. Supreme Court precedent, nor has he shown that the state courts' resolution of that claim was "based on an unreasonable determination of the facts." His remaining claims, (grounds two, three and four of the petition), have been procedurally defaulted, because he never fairly presented any of those claims to Minnesota's highest state court, (as required by O'Sullivan), and it is now too late for him to do so. It will therefore be recommended that the instant petition be dismissed with prejudice.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254, (Docket No. 1), be DISMISSED WITH PREJUDICE.

Dated: July 30, 2001

SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District

Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

| | | |
|---|---|---|
| 700 Federal Building<br>316 North Robert Street<br>St. Paul, MN 55101<br>(651) 848-1100 | 202 U.S. Courthouse<br>300 South Fourth Street<br>Minneapolis, MN 55415<br>(612) 664-5000 | 417 U. S. Courthouse<br>515 West First Street<br>Duluth, MN 55802<br>(218) 529-3500 |